The opinion of the qpurt was delivered by
Watkins, J.
This suit is a supplement to one of same title recently decided by us. 40 An. 91.
The gas company, asserting rights under alleged contracts, entered into in 1867, 1868 and 1870, with the municipalities of Jefferson City and Carrollton for street lighting with illuminating gas, seek by man-' damns to coerce respondent’s recognition and performance of them on the grounds:
1. That these municipalities were consolidated with and incorpor *1116 ated into the City of New Orleans by means of legislative enaet-ments, and that she assumed all of their duties, obligations and contracts.
2. That the City of New Orleans has frequently, since said legislative consolidation, recognized said contracts and admitted the binding force thereof, by enacting ordinances directing the payment of monthly allowances in favor of the relator.
It complains of the inadequacy of the $30,000 appropriated in the city budget of 1889 in its favor, and demands that there be appropriated the sum (1) of $42,900, or $50 each for 858 lamps; and (2) the sum of $12,350 to pay the contract price of 247 lamps, which were erected and lighted during the year 1888; and within the terms of a reservation in our former opinion. The increased amount demanded is $25,000 — on the deficit in 1888, $12,350, and on the shortage in 1889, $12,650. /
The answer of the respondents is practically a general denial.
There was judgment rejecting the relator’s demand, and it has appealed.
In the previous litigation the same contracts were relied upon, examined and construed; and we held that the rights which the company acquired prior to the consolidation of Jefferson and Carrollton with the City of New Orleans were unassailable, and that the concurrent obligations of the contracts have not been and could not be impaired by legislative or municipal provision.
In this connection we said: “We have carefully examined the contracts, the act of incorporation, the legislative statutes, the municipal resolutions and ordinances and the evidence adduced, and have realized that although under the resolution of April 27, 1868, of the Council of Jefferson City, the company be entitled to recover $50 per annum, for each of the gas lamps used on the streets therein named, it can not demand more than $45 per annum under the original contract of April 24, 1867, for each of the other lamps erected and used in Jefferson City; and thus it could do only where the same have been put up under municipal direction.”
We then proceeded to state that no stipulation to the contrary is found in the contract made with the city of Carrollton in 1871, nor in the legislative act of 1868, which recites both the contracts of 1867 and 1868, and the company’s act of incorporation.
*1117 That legislative enactment we held to be a confirmatory statute pure and simple. "We then declare that:
“While under a formal admission in the record it appears that 563 lamps only have been placed on the streets named in the resolution of 1868, there is nothing to show that the remaining 247 lamps, which -are not on the streets of Jefferson City, have been raised or lit at the instance of either of the cities (of Carrollton or Jefferson), or the City of New Orleans, beyond an ordinance of October 5, 1882, authorizing the company to lay pipes and put up lamps in the sixth district, and an agreement to pay for the use of gas in 1886 and 1887 at $37.50 per annum for each of the 765 lamps then in existence.
“There is no proof to show how many lamps had been raised and were being used on other streets at the bringing of this suit, and what agreement, if any, was ever entered into in relation to the lamps on streets not named.”
The court then recognized relator’s claim “for 563 lamps on those streets named in the resolution of 1868,” and reserved its right “to more, for lamps put up on other unnamed streets,” for future consideration.
In the decree in that case relator was allowed an appropriation of $28,150, or $50 each for the 563 lamps erected and in use in 1888 on the streets named in the resolution of 1868, and no more.
The budget appropriation for 1889 is only a little in excess of that allowance, and was presumably intended to provide for the same expense.
It is therefore apparent that in the present suit there is but one litigated question, and that is the same one that in the last suit was remitted to future consideration, i. e., the company’s claim for compensation “for lamps put up on other unnamed streets,” which were not designated in the resolution of 1868.
. Therefore, inasmuch as we held in the case cited that the company could not legally demand and recover compensation for such lamps as had been erected “on unnamed streets,” unless it could adminis-r ter proof of same having been “put up under municipal direction;” and, inasmuch as we held further that there was no proof to show how many lamps had been raised on unnamed streets, and what agreement, if any, was ever entered into in relation thereto, it follows necessarily that the relator was under obligation to supply the *1118 wanted evidence, otherwise it could not recover. We must consequently examine the record, and determine whether it has dis-' charged that duty.
An attentive examination of the record, and the various exhibits' annexed, discloses that during the years 1878, 1880 and 1882 various ordinances were adopted by the Oity Council authorizing lamps tobé erected on different streets in the sixth and seventh districts of-the city.
That the relator during a great many years, embracing the years ■1870 to 1880, inclusively, rendered to the City Council monthly bills-for gas lighting in the sixth and seventh municipal districts; and-these bills were examined and approved by the Administrator of Police, and appropriations made therefor.
But the only proof of the ordinances having been carried into, effect by the actual erection of gas lamps as contemplated therein is the parol testimony of the president of the company, which is to the effect ‘ ‘that never at any time was a pipe laid or a lamp erected by the Jefferson City Gas Light Company until the company was ordered to do so by the Administrator of Police of the city of New Orleans. That not only were the pipes laid and the lamps erected under express, written instructions from that officer, but that in every instance the said Administrator accompanied him in the inspection of the work thus ordered and done, and accepted the same from the company for the city of New Orleans.” Relator’s Brief, p. 14.
This testimony fails in one essential particular, and that is, as to the number of lamps which were erected by express municipal direction, and the names of the streets on which they were so erected. This infotmation is absolutely essential in such a proceeding as this. The number of lamps is of the essence of relator’s claim, and the streets on which the lamps enumerated were thus erected, is just as necessary a part of the information upon which we must act, because we could not otherwise determine whether the existing appropriation of $30,000 should be increased, as it covers the amount due relator for gas lighting on the streets that are designated in the contracts of 1867, 1868 and 1870.
Nor does an examination of the monthly allowances and the ordinances making appropriations therefor furnish the needful information. For instance, the ordinance of October 13, 1870, makes an allowance for only 212 lamps. That for November of that year, for *1119 233. That for February, 1871, for 269 lamps. . That for July, 1871,. for 330 lamps. That for August; 348 lamps. That for February, 1873, for 511 lamps. That for February, 1874, for 528 lamps. The highest number appropriated for in 1874, or 1875, or 1876, was 628; and the highest number thereafter appropriated for was 710. But this evidence is inadequate. It leads to the supposition that the council was satisfied with the showing made. But these were ex parte and extrajudicial proceedings, and the appropriations were made, in all likelihood, as a matter of course. Surely they can have no conclusive weight or force as evidence in a mandamus proceeding, and Wherein the City Council and the' Mayor are making a spirited resistance.
On a careful examination of the record and evidence, we feel justified in rejecting the relator’s demand, as did the judge a quo-. Construing it as one of non-suit, the judgment of the lower court is affirmed.